**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

CIVIL ACTION NO. 11-122-DLB

GATX CORPORATION                                              PLAINTIFF

vs.                    <u>MEMORANDUM OPINION AND ORDER</u>

LARRY ADDINGTON, *et al.*                                    DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Stephen and Robert Addington's Motion to Dismiss all claims against them in their individual capacities (Doc. # 10), as well as Plaintiff's Motion for Leave to Amend its Complaint[1] (Doc # 17).  Each motion has been fully briefed  (Docs. # 13, 18; and 25, 26, 39, 40 respectively), and is now ripe for review.  For the following reasons, Defendants Stephen and Robert Addington's Motion to Dismiss is hereby **granted**, and Plaintiff's Motion for Leave to Amend its Complaint is hereby **denied**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This action stems from the 2009 case of *GATX Corporation v. Appalachian Fuels, LLC, et al.* (0:09-cv-41-DLB), where this Court entered an Agreed Judgment against Larry Addington in the amount of $2,900,000.00.   In the present action, Plaintiff GATX

---

[1]  Styled as "Plaintiff's Motion to File First Amended Complaint."

Corporation alleges that Larry Addington anticipated he would be held liable for a substantial sum of money in the 2009 case, and that he fraudulently conveyed his real and personal property to the Larry Addington Irrevocable Trust for the Benefit of Maxwell Addington ("Irrevocable Trust") in order to place assets out of GATX's reach.  GATX also alleges that Stephen and Robert Addington, both individually and in their capacity as Co-Trustees of the Irrevocable Trust, were involved in the fraudulent conveyances, rendering them liable under various Kentucky statutory and common law theories.

### A.     The 2009 Suit – *GATX Corp. v. Appalachian Fuels, LLC, et al*

GATX Corporation served as the lessor of coal mining equipment to Appalachian Fuels, LLC, pursuant to various Master Lease Agreements executed in 2005 and 2006. Appalachian Fuels ("App Fuels") is a limited liability corporation organized and existing under the laws of the Commonwealth of Kentucky.  It is wholly owned by Energy Coal Resources, Inc. ("ECR"), another Kentucky corporation.  Larry[2] owns a thirty percent share in ECR.

On September 27, 2005, Larry Addington and others entered a Joint and Several Guaranty and Indemnity whereby they guaranteed the prompt payment of any and all debts owed by App Fuels to GATX, up to a maximum of $5,000,000.

From November 2007 to March 2009, GATX sent at least six e-mails to App Fuels giving notice that the company was behind on lease payments.  Stephen, as President of App Fuels, allegedly had multiple discussions with Larry about the delinquent payments. However, App Fuels remained in arrears on its lease payments to GATX.

---

[2]  Hereinafter, and with all due respect, the Court will refer to each of the Addington brothers by first name in the interest of clarity and brevity.

On May 15, 2009, GATX sued Larry[3] to enforce his obligations under the guaranty agreement.  (*GATX Corp. v. Appalachian Fuels, LLC, et al.,* 0:09-cv-41-DLB*).*  This Court subsequently entered an Agreed Judgment against Larry in the amount of $2,900,000.00. Thereafter, GATX and Larry agreed that GATX would forebear collecting the judgment until November 16, 2011.  However, Larry failed to pay the amount in full by the agreed date.

**B.     The Present Suit – *GATX v. Larry Addington, et al.*[4]**

GATX responded to Larry's failure to pay by filing the present action on November 17, 2011.  The Complaint alleges that between November 2007 and March 2009, Larry and Stephen had multiple discussions about App Fuel's financial condition, including the company's failure to meet its obligations under the various lease agreements with GATX. Based on these discussions, Larry anticipated that GATX would soon attempt to hold him liable for App Fuel's debts pursuant to the guaranty agreement.   In a proactive effort to place assets outside the reach of GATX, Larry, as "Grantor," converted a previously created revocable trust into an irrevocable trust for the benefit of his brother, Maxwell ("Max"), to be managed by his two other brothers, Stephen and Robert, as "Co-Trustees."

The Irrevocable Trust was officially established on December 29, 2008 and titled the "Larry Addington Irrevocable Trust f/b/o Maxwell Addington."  The trust's purported purpose

---

[3]  Larry was one of many defendants in the 2009 suit.

[4]  The facts presented below summarize the factual allegations in Plaintiff's original Complaint (Doc. # 1), and any facts gleaned from documents attached to or referenced in the Complaint.  Plaintiff has alleged additional facts in its Proposed Amended Complaint (Doc. # 39).  However, as the Court will explain below, Plaintiff's proposed amendments would be futile because they fail to raise claims that could survive a Rule 12(b)(6) motion to dismiss.  Thus, Plaintiff's motion for leave to file an amended complaint is denied, and factual allegations contained in the proposed amended complaint are not incorporated into this factual and procedural background.  The Court will, however, consider factual allegations contained in the proposed amended complaint where they are relevant to the Court's determination concerning the futility of the proposed amendments.

was to provide for Max Addington, who was seventy-seven (77) years old and suffered from cerebral palsy.  By the terms of the Trust Agreement, Larry agreed that the trust was irrevocable.  He also surrendered all rights to amend or revoke the trust agreement, and forfeited any incidents of ownership to any assets or interests conveyed to the trust.  However, Larry retained the power to appoint any principal or income of the trust by express reference in his Last Will.

Pursuant to the Irrevocable Trust Agreement, Larry conveyed his interest in three tracts of real estate located in Boyd County, Kentucky by quit-claim deed dated December 29, 2008 to Stephen and Robert as Co-Trustees of the Irrevocable Trust.  Max Addington resided in a 3,000 square foot house built on one of the three tracts of land.

GATX's Complaint alleges that Stephen drafted a "NOTE TO FILE" the day after Larry executed the Irrevocable Trust Agreement, which identifies Larry's ulterior motives.  According to the complaint, the note acknowledges that the revocable trust was converted into an irrevocable trust "due to concerns by Larry."  The Complaint states, "Among the 'concerns'  expressed by Stephen in the 'NOTE TO FILE' was a concern that creditors of Larry, including GATX, were about to sue Larry for substantial obligations owed by him in connection with several coal mining businesses that were insolvent and were teetering on the verge of bankruptcy."   (Compl. ¶ 58).

The Complaint's characterizations of the "NOTE TO FILE" are entirely inaccurate.  First, the evidence of record shows that Stephen did not draft the note.  In his October 31, 2011 deposition, Stephen testified that Crystal Slutz, Larry's secretary, drafted the note.  There are no markings, signatures, or language on the note to indicate that anyone but Ms.

4

Slutz was the one who drafted the note.  Second, the note never mentions Larry's concerns about creditors, potential debts, or legal liabilities.  Instead, Larry's declining health and desire to provide for his family after his death are the only "concerns" mentioned in the note.

After the Irrevocable Trust was established, Larry began transferring other personal assets to the trust.  On January 2, 2009, Larry instructed Town Square Bank ("TSB") to transfer $1,000,000.00 from his personal checking account to an account maintained by the Irrevocable Trust with TSB.  Although the Irrevocable Trust Agreement established that Larry shall not retain any control over trust property, the Complaint alleges that he wrote at least ten letters to TSB directing it to transfer funds from the irrevocable trust account to other entities he owned or controlled.[5]  GATX filed the 2009 suit approximately four months after the $1,000,000.00 transfer.

On November 18, 2010, more than 18 months after the 2009 suit was filed and 2 months before GATX and Larry reached a settlement in that suit, the Irrevocable Trust acquired title to three vehicles.  The Complaint alleges that the vehicles were either purchased from proceeds of Larry's transfer of $1.0 million to the Irrevocable Trust, or they were initially the personal property of Larry and transferred to the Irrevocable Trust after Larry realized that he might be liable to GATX.

_____

[5]  The Complaint details numerous other transactions involving funds from the irrevocable trust account at TSB.  Stephen, "as Co-Trustee of the Trust," initiated each of those transactions in large part to move funds from the checking account into investment accounts at other banks .  The Complaint does not allege that these transfers were in anyway fraudulent.  Instead, the sole purpose of documenting each of these transfers is to trace the proceeds of Larry's initial $1,000,000.00 transfer.  In short, Stephen moved $800,000.00 from TSB to an investment account at Kentucky Trust Company in Danville, Kentucky.  Later, Stephen moved all funds in the KTC account into investment and checking accounts at Morgan Stanley Smith Barney.

###### C.      Procedural Posture of the Present Suit

GATX filed the present suit on November 11, 2011 against Stephen, individually and in his capacity as Co-Trustee of the Irrevocable Trust, Robert, individually and in his capacity as Co-Trustee of the Irrevocable Trust, and Larry.  Count one of the Complaint (Doc. # 1) alleges that the Addington brothers participated in property conveyances with "intent to delay, hinder or defraud creditors" in violation KRS § 378.010.  Count two alleges that Larry, a debtor, conveyed property of his estate without receiving valuable consideration in violation of KRS § 378.020, and that Stephen and Robert aided and abetted Larry's conveyances, thus rendering them liable under KRS § 378.020 as well.

On December 20, 2011, Stephen and Robert filed a Motion to Dismiss (Doc. # 10) all claims against them in their individual capacity pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the Motion, Stephen and Robert argue that the Complaint does not contain a short and plain statement of the claims against them, nor does it contain any plausible factual allegations to support any claim against them in their individual capacities.  Moreover, Stephen and Robert argue that there is no factual or legal basis for direct liability under either of the Kentucky fraudulent conveyance statutes because Stephen and Robert, in their individual capacities, were neither transferors or transferees of the disputed property.  Likewise, Stephen and Robert assert that the Complaint fails to contain any plausible factual allegations that support an aider and abettor theory of liability.

GATX filed a timely response in opposition to the motion (Doc. # 15), arguing, *inter alia*, that it sufficiently plead facts to state claims against Stephen and Robert for aiding and abetting fraudulent transfers, conspiracy to commit fraudulent transfers, and fraud for

participating in fraudulent transfers.  In the response, GATX also requested leave to amend its Complaint to state the above-mentioned claims if the Court found that the claims were insufficiently plead.  (Doc. # 15 at 3).  Subsequently, Stephen and Robert timely filed a reply in support of their motion (Doc. # 18), and the motion was submitted for the Court's review.

However, before Stephen and Robert filed their reply brief in support of their Motion to Dismiss, GATX filed a Motion for Leave to Amend its Complaint (Doc. # 17).  Without attaching a proposed amended complaint to the Motion, GATX asserted that an amended complaint would state the following additional claims against Larry, Stephen and Robert: (1) conspiracy to commit fraudulent transfers; (2) fraud in connection with fraudulent transfers; and (3) negligence per se under KRS § 446.070.  Stephen and Robert responded in their individual capacities that the Motion should be denied because GATX failed to attach a proposed amended complaint to the motion.  (Doc. # 25).  GATX timely replied (Doc. # 26), and this matter was also submitted for the Court's review.

On January 31, 2012, Larry Addington provided notice that he filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the Eastern District of Kentucky on January 26, 2012 (No. 12-10029).  (Doc. # 19).  The Court entered an Order (Doc. # 20) on February 2, 2012, staying all claims against Larry pursuant to the automatic stay provision of 11 U.S.C. § 362(a)(1).

Larry's bankruptcy petition also prompted Stephen and Robert to file a motion for the Court to stay all claims against them as Co-Trustees of the Irrevocable Trust pursuant to 11 U.S.C. § 362(a)(3).  (Doc. # 28).  After that motion was fully briefed (Doc. # 30, 33),

7

the Court held oral argument on March 12, 2012, to consider each of the three pending motions. Attorney Andrew W. Wood appeared on behalf of GATX.  Attorneys Robert E. Maclin, III and David A. Cohen appeared on behalf of Stephen and Robert in their capacity as Co-Trustees; Attorney William C. Rambicure appeared on behalf of Stephen and Robert in their individual capacities.  The proceedings were recorded by Official Court Reporter Lisa Wiesman.

On March 15, 2012, the Court granted Stephen and Robert's Motion to Stay proceedings against them in their capacity as Co-Trustees (Doc. # 38).  However, the Court concluded that the claims against Stephen and Robert in their individual capacities were not subject to the automatic stay, and allowed GATX to continue prosecuting claims against those defendants.  (*Id.*).   Thereafter, GATX filed a Proposed Amended Complaint (Doc. # 39) in support of its Motion for Leave to Amend its Complaint, to which Stephen and Robert responded (Doc. # 40).  Stephen and Robert's Motion to Dismiss, and GATX's Motion for Leave to Amend its Complaint have now been fully briefed and are ripe for review.

## II.  ANALYSIS

### A.   Introduction

GATX has presented numerous legal theories in pursuit of a viable legal theory by which it might hold Stephen and Robert liable in their individual capacities.  In GATX's Complaint, it alleged that Stephen and Robert are directly liable, and liable for aiding and abetting Larry Addington in fraudulently conveying property in violation of KRS §§ 378.010 and 378.020. (Doc. # 1).  In GATX's response to the motion to dismiss, its legal theory

began to evolve.  GATX asserted that the Complaint also plead a sufficient factual basis to support additional legal theories, namely, conspiracy to effectuate fraudulent transfers and civil fraud.  (Doc. # 13).  Continuing its quest for a viable legal theory, GATX filed a Motion for Leave to Amend its Complaint (and subsequently filed a proposed amended complaint) with yet another legal theory – negligence per se under KRS § 446.070.  (Doc. # 17)  However, despite these continued efforts, GATX has failed to assert a viable legal theory against Stephen or Robert in their individual capacities for which relief may be granted

**B.    The Complaint Fails to State a Claim Against Stephen or Robert in Their Individual capacities for Which Relief May Be Granted**

Stephen and Robert move the Court to dismiss all claims against them in their individual capacities pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.  On the face of the Complaint, Plaintiff has alleged that Stephen and Robert participated in fraudulent conveyances, and aided and abetted Larry in fraudulently conveying property in violation KRS §§ 378.010 and 378.020. Plaintiff has since argued that the Complaint contains a sufficient factual basis to support additional claims, but has moved the Court for leave to file an amended complaint to assert those claims if the Court finds otherwise.  Because the additional claims Plaintiff attempts to assert – conspiracy to effectuate a fraudulent conveyance and civil fraud – are more particularly plead in the Proposed Amended Complaint, the Court will consider those claims in its discussion of Plaintiff's Motion for Leave to Amend its Complaint.  Therefore, the Court will only consider the claims of direct liability and aiding and abetting  fraudulent conveyance for purposes of the Rule 12(b)(6) motion.

## 1.      Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court is to "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477-78 (6th Cir. 2010).  In addition to the allegations in the complaint, the Court may also consider other materials that are referenced in and central to the plaintiff's complaint, *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999), are public records, or are otherwise appropriate for the taking of judicial notice.  *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) (internal quotation marks and citation omitted), *abrogated on other grounds by Matrixx Initiatives v. Siracusano*, – U.S. –, 131 S.Ct. 1309, 1323-25 (2011).

Under the pleading standard set forth in Federal Rule of Civil Procedure 8(a), a plaintiff must provide "a short and plain statement of the claim showing that [it] is entitled to relief."  The complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007), and instead proffer "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 470.  "Regarding culpability, the complaint must allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467-68 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,129 S.Ct. 1937, 1940 (2009)).  This requires the complaint to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

10

### 2. Stephen and Robert, As Non-transferees, Cannot Be Held Directly Liable for Violating the Kentucky Fraudulent Conveyance Statutes

To the extent that GATX has asserted that Stephen and Robert are directly liable for violating the fraudulent conveyance statutes, GATX has failed to state a claim upon which relief may be granted.  The purpose of the fraudulent conveyance statutes is to "put the creditors back in the same position they would have enjoyed immediately prior to the voidable conveyance." *Mattingly v. Gentry*, 419 S.W.2d 745, 747 (Ky. 1967). To fulfill this purpose,  "[t]he proper remedy in a fraudulent conveyance claim is the nullification of the transfer by returning the property at issue back to the transferor." *Paradigm BioDevices, Inc. v. Viscolgliosi Bros.*, – F. Supp.2d –, No. 11 Civ. 3489, 2012 WL 360414, at *4 (S.D.N.Y. Feb. 3, 2012) (citing *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 189 (2d Cir. 2006) (interpreting New York law)).   The plain language of both Kentucky fraudulent conveyance statutes make this purpose abundantly clear.  KRS § 378.010 states that, if the transfer is deemed fraudulent, it shall be "void as against such creditors, purchasers and other persons."  Likewise, KRS § 378.020 states that if the transfer meets its definition of a fraudulent conveyance, it shall "be void as to creditors whose claims are thereafter contracted."

While the primary remedy is to void the fraudulent conveyance, some states allow the creditor to seek compensatory damages from a transferee as an alternative form of relief.   Kentucky courts have not explicitly reached this conclusion.  However, the New York Supreme Court, Appellate Division has held that "a money judgment against the transferee may also be an available form of *substitute relief* where the transferee has disposed of the wrongfully conveyed property in some manner which makes it impossible

for return." *Joslin v. Lopez*, 309 A.D.2d 837, 839 (N.Y. App. Div. 2003) (emphasis added). Likewise, in Tennessee, the fraudulent conveyance statute explicitly allows a creditor to obtain either "avoidance of the transfer *or* obligation to the extent necessary to satisfy the creditors's claim." T.C.A. § 66-3-308(a)(1) (emphasis added). However, in Tennessee, a money judgment is only available against "the first transferee of the asset of the person for whose benefit the transfer was made." T.C.A. § 66-3-309(b)(1); *see Tareco Properties, Inc. v. Morriss*, 196 F. App'x 358, 362 (6th Cir. 2006); *see also Thompson v. Hanson*, 239 P.3d 537 (Wash. 2009) (en banc) (holding that, after the Washington legislature adopted the Uniform Fraudulent Transfer Act, a monetary judgment may be entered against the first transferee of the asset, the person for whose benefit the transfer was made, or subsequent transferees other than good-faith transferees).

Regardless of the remedy sought, a direct liability fraudulent conveyance claim is only actionable against the transferor or transferee. *See Paradigm BiDevices, Inc.*, 2012 WL 360414, at *4. Although Kentucky courts are silent on this issue, other states have interpreted similar fraudulent conveyance statutes and held that they "do[] not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, *a transferee or recipient thereof*." *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984) (emphasis added); *see also Elliott v. Glushion*, 390 F.2d 514, 516-17 (9th Cir. 1967) (holding that a fraudulent conveyance action is properly brought against a party who received the transferred property); *Paradigm BioDevices, Inc.*, 2012 WL 360414, at *4; *Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 n.1 (10th Cir. 1989) ("'[C]ourts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors.'") (internal

12

citation omitted); *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984) (holding that Texas law, like the Bankruptcy Act, does not allow fraudulent transfer actions against one who is not, directly or indirectly, a transferee or recipient of the property).

Neither Kentucky statutory nor case law explicitly defines a "transferee." However, according to Black's Law Dictionary, a "transferee" is "one to whom a property interest is conveyed."  Black's Law Dictionary 1536 (8th ed. 1999).   In the context of a fraudulent conveyance action under federal law, the Seventh and Ninth Circuits define a "transferee" even more narrowly, distinguishing a "transferee" from a "conduit."  These circuits agree that a "transferee" is one who not only receives property, but has "dominion over the money or other asset, [and] the right to put the money to one's own purpose."  *Bonded Fin. Serv. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *See also In re Bullion Reserve of N. Am.*, 922 F.2d 544, 548 (9th Cir. 1991).

Here, the Complaint does not allege that any property was conveyed to Stephen or Robert in their individual capacities.  Instead, the Complaint alleges that the property at issue was conveyed to the Irrevocable Trust, or to Stephen and Robert in their capacity as Co-Trustees.  The Complaint also alleges that Stephen and Robert, as Co-Trustees, exercised control over the property.  Thus, Stephen and Robert were not "transferees," and therefore cannot be directly liable for violating the fraudulent conveyance statutes.

### 3.   Aiding and Abetting a Fraudulent Conveyance is Not a Viable Legal Theory

GATX cannot prevail on an aiding and abetting fraudulent conveyances theory.  Contrary to GATX's assertion, courts generally do not recognize aiding and abetting a fraudulent conveyance as a viable cause of action against a non-transferee.    While

13

Kentucky courts have not addressed this issue, the Court believes that Kentucky would follow the overwhelming majority of states that hold such cause of action does not exist.

GATX cites *Time Warner Entertainment Co. v. Six Flags Over Georgia*, 537 S.E.2d 397, 407 (Ga. Ct. App. 2000), for the proposition that Georgia "explicitly acknowledges an aiding and abetting cause of action in . . . fraudulent conveyances." However, as the Eleventh Circuit later explained, the *Time Warner* opinion directly addressed aiding and abetting in the breach of a fiduciary duty. *Chepstwo Ltd. v. Hunt*, 381 F.3d 1077, 1088 (11th Cir. 2004). The Eleventh Circuit further held that any mention of the viability of an action for aiding and abetting fraudulent conveyance in *Time Warner* was merely dicta. *Id.* Ultimately, the Eleventh Circuit concluded that, as a matter of Georgia law, one who aids and abets a debtor in carrying out a fraudulent transfer cannot be liable if it is neither a debtor nor a transferee. *Id.*

Other states are in agreement with Georgia law that a non-transferee cannot be liable for aiding and abetting a fraudulent conveyance. For example, New York courts have consistently held that New York law does not recognize a cause of action against parties for aiding and abetting a fraudulent conveyance. *Paradigm BioDevices*, 2012 WL 360414, at *4; *Roselink Investors, L.L.C. v. Shenkman*, 386 F.Supp.2d 209, 227 (S.D.N.Y 2004); *Geren v. Quantum Chem. Corp.,* 832 F.Supp. 728, 737 (S.D.N.Y. 1993), *aff'd*, 99 F.3d 401, 1995 WL 737512 (2d Cir. 1995); *Fed. Deposit Ins. Corp. v. Porco*, 552 N.E.2d 158, 159 (N.Y. 1990). In *Federal Deposit Insurance Corp. v. Porco*, New York's highest court interpreted the plain language of New York's fraudulent conveyance statutes and held that "a creditor's remedy for the transfer of its debtor's assets, where undertaken prior to a judgment on the debt, is still to obtain a nullification of the conveyance and, where

14

undertaken after judgment, additionally to secure the assets in satisfaction of the debt."
552 N.E.2d 158, 159 (N.Y. 1990).  The *Porco* Court concluded that the statutes "did not,
either explicitly or implicitly, create a creditor's remedy for money damages against parties
who . . . were neither transferees of the assets nor beneficiaries of the conveyance."  *Id.*

Likewise, the Supreme Court of Florida has held that the Uniform Fraudulent
Transfer Act does not create a cause of action against a non-transferee for aiding and
abetting a fraudulent transfer.  *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1277
(Fla. 2004) (reaching this conclusion upon the issue being certified by the Eleventh Circuit
for review).  Like the *Porco* Court, the Supreme Court of Florida decided this issue by
looking to the plain language of Florida's fraudulent conveyance statute.  It held that "[t]here
simply is no language in [Florida's fraudulent conveyance act] that suggests the creation
of a distinct cause of action for aiding-abetting claims against non-transferees."  *Id.*
Instead, the Florida court held that "it appears that [Florida's fraudulent conveyance act]
was intended to codify an existing but imprecise system whereby transfers that were
intended to defraud creditors could be set aside."  *Id.*

Indeed, the United States District Court for the District of Delaware has recognized
that it is clearly the majority approach that "liability cannot be imposed on non-transferees
under [an] aiding and abetting . . . theor[y]."  *Magten Asset Mgmt. Corp. v. Paul Hastings
Janofsky & Walker LLP*, No. Civ.A.04-1256, 2007 WL 129003, at *3 (D. Del. Jan. 12, 2007).
The Delaware court's assertion that this is the majority approach is supported by cases
interpreting Arizona, Indiana, Maine, and Texas law. *See Mann v. GTCR Golder Rauner,
L.L.C.*, 483 F. Supp. 2d 884, 919 (D. Ariz. 2007) (holding that the a cause of action for

aiding and abetting a fraudulent transfer is not recognized under the AUFTA); *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, No. 1:03-cv-0132, 2004 WL 771230, at *14 (S.D. Ind. Mar. 24, 2004) (holding that the Indiana fraudulent transfer act did not support accessory liability); *Fed. Deposit Ins. Corp. v. S. Prawer & Co.*, 829 F. Supp. 453, 457 (D. Me. 1993) (holding that the Maine fraudulent transfer act does not recognize liability for aiding and abetting a fraudulent conveyance); *Fed. Deposit Ins. Corp. v. White*, No. 3:06-cv-0560, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) (holding that the Texas fraudulent conveyance act only allows recovery against one who is in receipt of the fraudulently conveyed property).  Each court held that the plain language of the respective state fraudulent conveyance laws did not support a claim for aiding and abetting a fraudulent conveyance.

Likewise, federal courts have consistently held that there is no such thing as liability for aiding and abetting a fraudulent conveyance as a matter of federal law under Section 548 of the Bankruptcy Code.  *In re Fedders N. Am., Inc.*, 405 B.R. 527, 549 (Bankr. D. Del. 2009); *See In re McCook Metals LLC,* 319 B.R. 570, 591 (Bankr. N.D. Ill. 2005); *In re Ampat Southern Corp.*, 128 B.R. 405, 410-11 (Bankr. D. Md. 1991).  The plain language of Section 548 indicates that it only reaches recipients of the property in question.  *In re Magnesium Corp. of America*, 399 B.R. 722, 771 (Bankr. S.D.N.Y. 2009).  To impose secondary liability on those that have not received transferred property would be writing a remedy into a statute by judicial construction, which federal courts have refused to do.  *Id.*

Although a Kentucky court has yet to address this specific issue, GATX has provided no reason for the Court to deviate from the consistent conclusion of other states that non-transferees may not be liable for aiding and abetting a fraudulent conveyance.  Like New

York's  Court of Appeals decided in *Porco*, and Florida's Supreme Court decided in *Freeman*, the plain language of Kentucky's fraudulent conveyance statutes clearly indicates that they are intended to void fraudulent conveyances, and not to impose in personam liability.  KRS Section 378.010 states, in part:

> Every gift, conveyance, assignment or transfer of . . . any estate, real or personal . . . made with the intent to delay hinder or defraud creditors, purchasers or other persons  . . . *shall be void as against such creditors, purchasers and other persons.*

KRS § 378.010 (emphasis added).  Similarly, Section 378.020 states:

> Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, *shall be void as to all his then existing creditors* . . . .

KRS § 378.020 (emphasis added). Therefore, to the extent that GATX has plead that Stephen and Robert aided and abetted a fraudulent conveyance, that claim is dismissed. Furthermore, GATX has requested leave to amend its complaint so that it may assert this claim if it was not properly plea in the original Complaint.  Having concluded that such a claim is not viable as a matter of law, it would be futile to grant GATX's motion to the extent it wishes to assert a claim for aiding and abetting a fraudulent transfer.

## C.   GATX's Proposed Amendments to its Complaint Would Be Futile Because The Additional Claims Could Not Withstand a 12(b)(6) Motion to Dismiss

In GATX's Proposed Amended Complaint, it seeks to allege three additional claims against Stephen and Robert in their individual capacities.  In Count 1 of the Proposed Amended Complaint, GATX alleges that Stephen and Robert are liable for fraud for

participating in fraudulent transfers.[6]  Count 3 of the Proposed Amended Complaint alleges that Stephen and Robert are liable for conspiracy to effectuate fraudulent transfers by Larry Addington to the Irrevocable trust.  Count 4 of the Proposed Amended Complaint alleges negligence per se under KRS § 446.070.   For the reasons that follow, each of these amendments would be futile and, therefore, GATX's Motion for Leave to Amend its Complaint is denied.

### 1.    Standard of Review

Federal Rule of Civil Procedure 15(a)(2) requires the Court to freely grant leave when justice so requires.  However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).   "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Id.*

### 2.    GATX Has failed to Allege Sufficient Facts to Support a Claim of Fraud

In Count 1 of GATX's Proposed Amended Complaint, the company alleges that Stephen and Robert are liable for fraud for participating in fraudulent transfers made by Larry Addington.  Kentucky law recognizes two types of fraud – fraud by misrepresentation and fraud by omission. *Marrowbone Pharmacy, Inc. v. Johnson*, No. 2010-CA-00429-MR,

---

[6] Count 2 alleges that Stephen and Robert are liable for aiding and abetting fraudulent transfers, which has already been considered.

2011 WL 6004345, at *5 (Ky. Ct. App. Dec. 2, 2011).  Because GATX has failed to clearly identify which type of fraud allegedly occurred, the Court will analyze the facts presented in the Proposed Amended Complaint under both theories.

### (a)   Fraud by Misrepresentation

To establish a *prima facie* case of fraud by misrepresentation, the plaintiff must allege facts to support the following six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.  *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009); *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).  "The plaintiffs [sic] reliance, of course, must be reasonable."  *Flegles, Inc.*, 289 S.W.3d at 549.

Here, GATX has failed to allege sufficient facts to establish a *prima facie* case of fraud by misrepresentation.  The Proposed Amended Complaint alleges that Stephen and Robert were both aware that App Fuels was failing to meet its contractual obligations under the GATX lease.  The Amended Complaint also alleges that Stephen "kept L. Addington up to speed on the general status of the App Fuels/GATX relationship, and gave him updates on the status of App Fuels' conversations with GATX relative to trying to satisfy GATX's requirements and payment terms."  (Doc. # 39, ¶ 118).  Additionally, the Amended Complaint asserts that Stephen and Robert "knowingly participated in and condoned L. Addington's transfer of the Assets to the Trust for the purpose of defrauding L. Addington's creditors, including GATX."  (*Id.*).

19

However, these facts are insufficient to allege fraud by misrepresentation. Aside from alleging that Stephen and Robert potentially knew about and condoned Larry's actions, GATX has failed to allege the most basic element of this tort – a misrepresentation. In fact, GATX has failed to even allege that Stephen or Robert ever made *any* representation to GATX, truthful or not, that GATX reasonably relied on to its detriment. These facts simply do not support the tort of fraud by misrepresentation.

**(b)    Fraud by Omission**

If GATX is attempting to allege that Stephen and Robert are liable for fraud by omission, that attempt has also failed. Kentucky law also recognizes the tort of fraud by omission, which includes the following four elements: (1) that the defendants had a duty to disclose a fact or facts, (2) that the defendants failed to disclose such fact, (3) that the failure to disclose induced the plaintiff to act, and (4) that the plaintiff suffered actual damages therefrom. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). "However, a duty to disclose is only created where a fiduciary or confidential relationship exists between the parties, where such duty is imposed by statute, or where the defendant has already partially disclosed facts creating the impression that a full disclosure has been made." *Marrowbone Pharmacy, Inc.,* 2011 WL 6004345, at *5 (citing *Rivermont Inn, Inc.*, 113 S.W.3d at 641).

Again, GATX has failed to plead sufficient facts to support this tort. Most notably, GATX has not alleged that Stephen or Robert had a duty to disclose any facts to GATX. Having reviewed the facts alleged in the Proposed Amended Complaint, it does not appear that Stephen or Robert had a fiduciary or confidential relationship with GATX, nor had

20

Stephen or Robert partially disclosed facts to GATX that would have created the impression that full disclosure had been made. Likewise, Stephen and Robert were not under a statutory duty to disclose any facts to GATX. Moroever, GATX has not alleged that it relied on any factual omission which caused it to suffer damages. Therefore, amending the Complaint to add a claim for fraud by omission would be futile as such a claim would not survive a Rule 12(b)(6) motion to dismiss.

Notwithstanding Kentucky case law clarifying that two types of fraud are recognized in Kentucky, fraud by misrepresentation and fraud by omission, GATX has cited *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 215 (Ky. Ct. App. 2010) for the proposition that "[u]nder Kentucky law, a party is liable in fraud for knowingly participating or condoning the selling and disposing of property for the purpose of defrauding creditors." (Doc. # 39 ¶ 117). However, GATX's reliance on *Daniels* is misplaced. In *Daniels*, the Kentucky Court of Appeals stated that

> [defendant] cites *Johnson v. Cormney*, 596 S.W.2d 23 (Ky. App. 1979), for the proposition that it is well established in Kentucky that a party is liable for fraud for knowingly participating or condoning the selling and disposing of property for the purpose of defrauding creditors. A reading of that case shows the actual issue was about the appropriateness of the jury instructions [which contained a similar statement of law].

*Daniels*, 300 S.W.3d at 215. As this quotation makes clear, it was the defendant, not the court, that proposed this rule of law based on its faulty reliance on *Johnson*.

A review of *Johnson v. Cormney* shows that the "rule" proposed by GATX is both imprecise and supports only a portion of the fraud by omission tort. In *Johnson*, the defendant challenged the following jury instruction pertaining to a charge of fraud:

> Do you believe from the evidence that . . . the defendant . . . caused or knowingly participated in *or knowingly condoned* the taking, selling or disposing of money or property . . . with the intent to avoid the payment of mortgages on such property, or to cheat, hinder or delay the creditors . . . including plaintiff?

*Johnson*, 596 S.W.2d at 26, *overruled on other grounds by Marshall v. City of Paducah*, 618 S.W.2d 433 (Ky. App. 1981).  The defendant argued that the trial court's use of the word "condoned" erroneously allowed the jury to find him liable without finding that he committed affirmative acts to the detriment of the plaintiffs.  *Id.*

The Court of Appeals began by highlighting that the complaint alleged that the defendant was liable for omitted *and* overt fraudulent acts.  *Id.*  The court then held that contrary to the defendant's assertion, "fraud and deceit are not limited to active or affirmative acts when the circumstances surrounding a transaction impose a duty or an obligation upon one of the parties to disclose material facts known to him and not known to the other party." *Id.* (citing *Hall v. Carter*, 324 S.W.2d 410 (1959)).  The jury instruction's mention of "condoned" did not mislead the jury about the requirements of the fraud by omission tort because it conveyed the idea that the defendant must have "condon[ed] . . the acts of another . . . both with the knowledge of the acts and with his intent to . . . cheat, hinder or delay creditors."  *Id.*

As the *Johnson* case makes clear, the "rule" proposed by GATX only encompasses a part of the tort of fraud by omission.  A party may only be liable for this tort if he had a duty or obligation to disclose material facts to the opposing party to a transaction.  *Id.*  Without having some pre-existing duty, a party cannot be liable for fraud by omission simply because he condoned the acts of another with the intent to cheat, hinder or delay creditors.  *See id.*

22

As explained above, GATX has not alleged that Stephen or Robert had any duty to disclose facts to the company.  Therefore, GATX has not alleged a sufficient factual basis to support a claim of fraud by omission.

### 3.    Conspiracy to Effect a Fraudulent Conveyance is Not a Viable Cause of Action Against Non-transferee Third Parties

GATX seeks leave to amend its Complaint so that it may allege that Stephen and Robert are liable for conspiring with Larry Addington to effect a fraudulent conveyance. Kentucky law recognizes a claim for civil conspiracy, and defines it as a "corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means."  *Smith v. Bd. of Educ. of Ludlow,*  94 S.W.2d 321, 325 (Ky. 1936).  "Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort."  *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389, 2009-CA-000026, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010).  GATX argues that Stephen and Robert in their individual capacities conspired to assist Larry Addington in transfers that violated KRS §§ 378.010 and .020, rendering them liable for conspiracy to effect a fraudulent conveyance.

Kentucky law has not addressed whether a cause of action exists for conspiring to effect a fraudulent conveyance.  In GATX's response to the Motion to Dismiss, GATX represents that states are largely in accord with the proposition that non-transferees may be liable for conspiring to effect fraudulent conveyances.  GATX relies on the Eleventh Circuit Court of Appeals' decision in *Cheptsow Ltd. v. Hunt*, 381 F.3d 1077 (11th Cir. 2004), to support this proposition.  In *Hunt*, the Eleventh Circuit held that Georgia law recognized

23

a claim against non-transferees for conspiring with a debtor to effect fraudulent transfers. *Id.* at 1091.

Contrary to GATX's assertion, Georgia law is in the clear minority.[7]  While few states do recognize a cause of action for conspiring to effect a fraudulent conveyance, "the majority of courts interpreting state [fraudulent conveyance] laws . . . have concluded that liability cannot be imposed on non-transferees under . . . conspiracy theories." *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*, No. Civ.A.04-1256-JJF, 2007 WL 129003, at *3 (D.Del. Jan. 12, 2007); *see also Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (recognizing that the majority of jurisdictions do not allow claims for conspiracy to effect fraudulent conveyance, but choosing to follow the minority approach). States in the majority have reached this conclusion via two distinct analytic paths.

Some states have reached the more broad conclusion that there is no such cause of action for civil conspiracy to effect a fraudulent conveyance.  This line of cases holds that there can be no action for civil conspiracy to effect a fraudulent conveyance when the plaintiff would not be entitled to recover money damages from the defendant for the underlying fraudulent conveyance.  Where courts have discussed this holding in detail, they began their analysis by defining the elements of a civil conspiracy claim. *Fed. Deposit Ins. Corp. v. S. Prawer & Co.*, 829 F. Supp. 453, 456  (D. Me 1993); *Efessiou v. Efessiou, et al.*,

---

[7] Arizona, Illinois, New Jersey, and Wisconsin are among the other states that allow claims for conspiring to effect fraudulent conveyance against those that neither received nor benefitted from the fraudulent conveyance.  *See e.g. McElhanon v. Hing,* 728 P.2d 273, 278 (Ariz. 1986); *In re Rest. Dev. Grp., Inc.,* 397 B.R. 891, 897 (Bankr. N.D. Ill. 2008); *Banco Popular N. Am. v. Gandi,* 876 A.2d 253, 263 (N.J. 2005); *Dalton v. Meister*, 239 N.W.2d 9, 18 (Wis. 1976).

41 Va. Cir. 142, 1996 WL 1065637, at *4 (Va. Cir. Ct. Nov. 12, 1996).  For example, in

*Efessiou v. Efessiou*, the court explained that a "civil conspiracy requires two or more

persons combined to accomplish, by some concerted action, an unlawful purpose or some

lawful purpose by unlawful means resulting in damage to the plaintiff." *Efessiou*, 1996 WL

1065637, at *4.  After setting forth the elements of the tort, each court emphasized that civil

actions for conspiracy are premised on damages sustained from an underlying tort. *Id.*; *S.

Prawer & Co.*, 829 F. Supp. at 456.

In *Efessiou*, the court held that, with limited exception, there can be no in personam

liability for a fraudulent conveyance action; therefore, a party cannot circumvent the

limitations of a fraudulent conveyance action by bringing a civil conspiracy claim seeking in

personam liability. *Efessioiu*, 1996 WL 1065637, at *4.[8]  Similarly, in *S. Prawer & Co.*, the

court held that an  action to set aside a fraudulent conveyance is essentially a contract law

claim.  *S. Prawer & Co.*, 829 F. Supp. at 455 (citing *United States v. Franklin*, 376 F. Supp.

378 (E.D.N.Y. 1973); *Branch v. Fed. Deposit Ins. Corp.*, 825 F. Supp. 384 (D. Mass 1993);

*Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967)).  Therefore, the *S. Prawer & Co.*

Court held that a fraudulent conveyance action could not serve as a tort underlying a civil

conspiracy claim.  *Id.*  Ultimately, both courts held that there can be no liability for conspiring

---

[8] The court recognized that the Virginia Supreme Court had carved a narrow exception to the general
rule against imposition of personal liability in fraudulent conveyance cases, "under which a court may impose
personal liability on a transferee when the property fraudulently transferred cannot be identified in any form
because it has been commingled with funds in the hands of the transferee." *Efessiou*, 1996 WL 1065637, at
*4.  In cases where the narrow exception applies, the court suggested that a civil conspiracy claim for effecting
a fraudulent conveyance might be viable.  Notably, however, the court also suggested that personal liability
may then be imposed on the *transferee*.

to effect a fraudulent conveyance.  *Id.*[9]

Other courts have held more specifically that there is no cause of action against a non-transferee for conspiring to effect a fraudulent conveyance.[10]  For example, New York courts have held in a perfunctory manner that New York law has not "'created a creditor's cause of action in conspiracy, assertable against nontransferees or nonbeneficiaries solely for assisting in the conveyance of a debtor's assets.'"  *Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 737 (S.D.N.Y. 1993) (quoting *Fed. Deposit Ins. Corp. v. Porco*, 552 N.E.2d 158, 159 (N.Y. 1990)).  Instead, claims premised on a fraudulent conveyance are only actionable against the debtor, transferees or beneficiaries.  *Id.*

The United States Bankruptcy Court for the District of Maryland reached a similar conclusion in *In re Minh Vu Hoang*, No. 05-21078-TJC, 2012 WL 195316 (Bankr. D. Md. Jan. 23, 2012).  Like the courts in *Efessiou* and *S. Prawer & Co.*, the Bankruptcy Court noted that "conspiracy is not an independent tort," but must be premised on an underlying, actionable tort.  *Id.* at *5.  Furthermore, conspiracy liability presupposes that the co-conspirator may be liable for the underlying tort.  *Id.* at *4.  The court then turned to the

---

[9]  *See also In re Harwell*, No. 05-41744, 2011 WL 4566443, at *11 (Bankr. M.D. Fla. Sept. 30, 2011) (holding that there is no liability under Florida law for conspiracy to commit fraudulent transfers); *Morgan Stanley v. Jecklin*, No. 2:05-cv-1364, 2007 WL 923836, at *2 (D. Nev. 2007 Mar. 23, 2007) (holding that Nevada law would not recognize conspiracy to defraud under the Uniform Fraudulent Transfers Act); *Rohm and Haas Co. v. Capuano*, 301 F. Supp. 2d 156, 161 (D.R.I. 2004) (holding that the defendants could not be liable under the Rhode Island UFTA as mere participants in an alleged fraudulent transfer).

[10]  *See, e.g., Fundacion Presidente Allende v. Bancho de Chile*, No. 05-cv-9771, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) ("A fraudulent conveyance claim cannot survive absent a showing that defendant had control over the transferred assets or that they benefitted from the conveyance."); *Fed. Deposit Ins. Corp. v. White*, No. 3:96-cv-0560, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) ("[T]he pertinent statutes do not create personal liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receives or in which he acquires an interest."); *Mack v. Newton*, 737 F.2d 1343, 1357 (5th Cir. 1984) (holding that "one who did not actually receive any of the property not fraudulently transferred . . . will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer").

Maryland fraudulent conveyance statute and determined that only the transferee and transferor may be liable for a fraudulent conveyance.  *Id.*  Thus, the court concluded that a nontransferee may not be liable for conspiring to effect a fraudulent conveyance, regardless of its participation in the conspiracy, because that third party cannot be liable for the underlying fraudulent conveyance.  *Id.*; *But see Qwest Communications Corp. V. Weisz*, 378 F. Supp. 2d 1188, 1192-1193 (S.D. Cal. 2003) (holding that a coconspirator must be legally capable of committing the underlying tort, and that in limited instances a non-transferee may be legally capable of committing a fraudulent conveyance).

No Kentucky court has been asked to determine whether a claim for conspiring to effect a fraudulent conveyance is recognized as a matter of Kentucky law.  However, the majority approach appears to be in line with the goals of Kentucky's fraudulent conveyance statutes; therefore, Kentucky would likely adopt the majority approach.  Like the fraudulent conveyance statutes at issue in *Efessiou* and *S. Prawer & Co.*, the purpose of Kentucky's fraudulent conveyance statutes is to "put the creditors back in the same position they would have enjoyed immediately prior to the voidable conveyance."  *Mattingly v. Gentry*, 419 S.W.2d 745, 747 (Ky. 1967).  To fulfill this purpose, the plain language of both statutes allows a creditor to void the fraudulent conveyance.  However, neither the plain language of the statutes or Kentucky case law suggests that a defendant can be personally liable for fraudulently conveying property.  Therefore, as the court held in *Efessiou*, a plaintiff may not circumvent the limitations of the fraudulent conveyance action by bringing a civil conspiracy claim seeking an in personam judgment.

Moreover, even if Kentucky recognized a claim of conspiring to effect a fraudulent conveyance, it appears that Kentucky would follow the well-reasoned holding of *In re Minh Vu Hoang* that a nontransferee cannot be liable for conspiring to effect a fraudulent conveyance. The Kentucky Supreme Court has held that in order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995). As has already been explained, *supra III(B)(2)*, a nontransferee cannot be directly liable for a fraudulent conveyance and, thus, cannot engage in an underlying unlawful act as described by *Montgomery*. Therefore, it is legally impossible for a non-transferee to conspire to effect a fraudulent conveyance. *See In re Minh Vu Hoang*, 2012 WL 195316, at *4 (holding that one may not be liable for civil conspiracy unless he is legally capable of committing the underlying tort); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd et al.*, 869 P.2d 454, 478 (Cal. 1994). As a result, GATX's Motion for Leave to Amend its complaint to add a claim for conspiring to effect a fraudulent conveyance is denied because such an amendment would be futile.

### 4.   A Violation of Kentucky's Fraudulent Conveyance Statutes Cannot Give Rise to a Negligence Per Se Claim Under KRS § 446.070

GATX's Proposed Amended Complaint also asserts a negligence *per se* claim against Stephen and Robert under KRS § 446.070. That statute states:

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

GATX intends to assert that the Addingtons violated the fraudulent conveyance statutes, which caused GATX to sustain financial damages, rendering the Addingtons liable for

negligence *per se*.  However, this is not a viable legal theory and leave will not be granted for GATX to add this claim.

KRS § 446.070 codifies the common-law doctrine of "negligence *per se*" in Kentucky. *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008).  Negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Id.* (internal quotation marks and citation omitted).  The negligence *per se* statute "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).  Additionally, "in order for a violation to become negligence *per se*, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent." *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997).

GATX's proposed negligence *per se* claim against Stephen and Robert would not withstand a 12(b)(6) motion for two reasons.  First, the plain text of KRS § 446.070 states, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation . . . ."  As has already been discussed, Stephen and Robert, as non-transferees, cannot "violate" the fraudulent conveyance statutes.  Only the debtor and transferees may be liable under either statute.  Second, and ever more problematic, negligence *per se* claims borrow the statutory standard of care from statutes that "provide no inclusive remedy."  *Young*, 289 S.W.3d at 589.  Both of the fraudulent conveyance statutes already provide a remedy – voiding the fraudulent conveyance.  Thus, GATX's attempt to find a viable legal theory under KRS § 446.070 is

flawed.  KRS § 446.070 provides no relief for violations of the fraudulent conveyance statutes.  As such, GATX's Motion for Leave to Amend its Complaint to add a negligence *per se* claim against Stephen and Robert in their individual capacities is denied.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendants Stephen and Robert Addington's Motion to Dismiss (Doc. # 10) all claims against them in their individual capacities is hereby **GRANTED**;

(2)     Plaintiff GATX's Motion to File First Amended Complaint (Doc. # 17) is hereby **DENIED**; and

(3)     All claims against Defendants Stephen and Robert Addington in their individual capacities are hereby **DISMISSED WITH PREJUDICE.**

This 9th day of May, 2012.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Ashland\0-11-122 MOO Granting MTD and Denying Mtn for leave to amend.wpd