**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 11-122-DLB**

**GATX CORPORATION**                                                             **PLAINTIFF**

vs.                 **MEMORANDUM OPINION AND ORDER**

**LARRY ADDINGTON,** *et al*                                              **DEFENDANTS**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

## I. INTRODUCTION

GATX Corporation, a judgment creditor, brings this state-law fraudulent conveyance action against the debtor-transferor of various real and personal property, transferees of that property, and non-transferee third parties who allegedly participated in the transfers. Claims against the transferor and transferees have been stayed pending the resolution of the transferor's bankruptcy proceedings. The Court dismissed all claims against the non-transferees, Robert and Stephen Addington in their individual capacities, finding that non-transferees could not be liable for participating in a fraudulent conveyance. (Doc. # 41).

This matter is before the Court on Plaintiff GATX Corporation's motion for a final judgment and certification for appeal (Doc. # 42) of the Court's May 9, 2012 Memorandum Opinion and Order (Doc. # 41) dismissing all claims against Stephen and Robert Addington in their individual capacities. The matter has been fully briefed (Docs. # 43, 45), and is now ripe for review.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2011, Plaintiff GATX Corporation ("GATX") filed a Complaint against Larry, Stephen and Robert Addington, alleging that the Addington brothers participated in various fraudulent conveyances that must be declared void pursuant to KRS §§ 378.010 and 378.020. (Doc. # 1). Specifically, the Complaint alleges that Larry transferred real and personal property to Stephen and Robert as Co-Trustees of an irrevocable trust with the intent to delay, hinder or defraud GATX, a judgment creditor of Larry. The Complaint also alleges that Larry did not receive adequate consideration for the transfers. As a result, GATX contends that the transfers should be declared void under KRS §§ 378.010 and 378.020. Additionally, GATX maintains that Larry, as transferor, and Stephen and Robert, in their capacity as Co-Trustees and in their individual capacity, are liable for compensatory and punitive damages.

Stephen and Robert filed a Motion to Dismiss all claims against them in their individual capacities (Doc. # 10), and offered six arguments in support of their motion: (1) the Complaint did not comply with Federal Rule of Civil Procedure 8(a)(2) in that it did not contain a short and plain statement of the claims against them in their individual capacities; (2) the Complaint contained no material factual allegations against them in their individual capacities; (3) there is no legal basis for finding them liable under KRS §§ 378.010 or 378.020 because they did not receive any of the property at issue; (4) the Complaint contained no plausible factual allegations supporting aider and abettor liability; (5) punitive damages are not available for violating either statute; and (6) GATX failed to show how it was defrauded out of money with respect to two of the transfers at issue. (*Id.*).

2

While the motion to dismiss was being briefed, GATX filed a Motion for Leave to Amend its Complaint. (Doc. # 17). In that motion, GATX argued that its original complaint sufficiently alleged that Stephen and Robert in their individual capacities were liable for fraud, conspiracy to commit fraudulent transfers, and aiding and abetting fraudulent transfers based on their participation in the allegedly fraudulent transfers. GATX sought leave to "break its claims for fraud, conspiracy to commit fraudulent transfers, and aiding and abetting fraudulent transfers out into separate counts." (Doc. # 17-1, p. 5). GATX also indicated that it would add a negligence per se claim against Stephen and Robert in their individual capacities.

Three days after GATX filed its Motion for Leave to Amend the Complaint, Larry Addington gave notice that he had filed a voluntary petition in Bankruptcy under Chapter 11 of the Bankruptcy Code. (Doc. # 19). Pursuant to the automatic stay provision of 11 U.S.C. § 362(a)(1), the Court stayed all claims in this matter against Larry Addington pending resolution of his bankruptcy proceeding. (Doc. # 20).

Prompted by Larry's bankruptcy petition, Stephen and Robert, in their capacity as Co-Trustees, subsequently filed a motion to stay the fraudulent conveyance claims against them as well. (Doc. # 28). They argued that the state-law fraudulent conveyance claims against them were essentially property of Larry's bankruptcy estate and thus subject to the automatic stay provision of 11 U.S.C. § 362(a)(3). GATX opposed that motion in its entirety (Doc. # 30), but its argument in opposition more directly expressed concerns about staying claims against Stephen and Robert in their individual capacities.

On March 12, 2012, the Court held oral argument on all three of the pending motions. At the conclusion of the hearing, the Court ordered that the Motion to Dismiss and

3

Motion to Stay stand submitted. Additionally, the Court ordered GATX to file a Proposed Amended Complaint in response to Stephen and Robert's concerns that they had been unable respond to the merits of the Motion for Leave to Amend the Complaint without reviewing the proposed amendments. After GATX filed the Proposed Amended Complaint (Doc. # 39), Stephen and Robert filed a response in opposition arguing, *inter alia*, that the proposed amendments would be futile because they could not withstand a motion to dismiss under Rule 12(b)(6). (Doc. # 40).

On May 9, 2012, the Court issued its Memorandum Opinion and Order granting Stephen and Robert's Motion to Dismiss and denying GATX's Motion for Leave to Amend its Complaint. *GATX Corp. v. Larry Addington, et al*, – F. Supp. 2d –, No. 11-122-DLB, 2012 WL 1621363 (E.D. Ky. May 9, 2012). The opinion centered on the legal viability of the fraudulent conveyance claims asserted against Stephen and Robert as non-transferees. The Court decided four matters of first impression in Kentucky law and applied well-settled Kentucky law to a fifth claim. *Id.* at *4. First, the Court held that non-transferees cannot be directly liable for violating Kentucky's fraudulent conveyance statutes. *Id.* at *6-7. Similarly, consistent with the majority of states that have decided the issue, the Court held that non-transferees cannot be liable under Kentucky law for aiding and abetting, or conspiring to effect, a fraudulent conveyance. *Id.* at *7-9, *12-14. As the final matter of first impression, the Court concluded that a violation of Kentucky's fraudulent conveyance statutes cannot give rise to a negligence per se claim under KRS § 446.070. *Id.* at *14-15. Finally, applying well-settled Kentucky law, the Court held that GATX failed to allege sufficient facts to support a claim of fraud against Stephen and Robert in their individual capacities. *Id.* at *9-12.

4

Shortly after the Court dismissed all claims against Stephen and Robert in their individual capacities, the Bankruptcy Court converted Larry's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. (Doc. # 42-1). According to GATX, Mark T. Miller has been appointed as the trustee of Larry's bankruptcy estate, with the right to pursue any and all claims on behalf of Larry's creditors. (*Id.*).

GATX now moves the Court to certify its May 9, 2012 Memorandum Opinion and Order ("Order") as a final and appealable judgment pursuant to Federal Rule of Civil Procedure 54(b). (Doc. # 42). GATX argues that there is no just reason for delay in certifying the Order as a final judgment, particularly given the "unusual posture of this action." (*Id.*). Stephen and Robert have responded in opposition (Doc. # 43), arguing that the motion should be denied in order to avoid piecemeal litigation. GATX has filed a reply (Doc. # 45), and the matter is now ripe for review.

## III.  ANALYSIS

GATX has moved the Court to enter a final judgment and certify for appeal its May 9, 2012 Memorandum Opinion and Order ("May 9th Order") dismissing all claims against Stephen and Robert Addington in their individual capacities. (Doc. # 41). GATX argues that the Court's prior Order disposes of all claims against Stephen and Robert Addington in their individual capacities and that there is no just reason for the Court to delay certification of its Order.

Federal Rule of Civil Procedure 54(b) permits courts dealing with multiple claims or multiple parties to direct the entry of a final judgment as to fewer than all of the claims or parties. The rule states in pertinent part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

This Rule was adopted in "response to the need created by the liberal joinder provisions for the Federal Rules of Civil Procedure to revise 'what should be treated as a judicial unit for purposes of appellate jurisdiction.'" *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 432 (1956)). "It attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.* (internal quotations omitted). Ultimately, the rule allows the district court to act as a "dispatcher," and exercise its discretion in the interest of sound judicial administration in "releas[ing] for appeal final decisions . . . for fewer than all the parties." *Id.* (internal quotations omitted).

The Sixth Circuit instructs district courts to exercise the power conferred by Rule 54(b) only "in the infrequent harsh case as an instrument for the improved administration of justice." *Id.* (internal quotations omitted). Accordingly, "Rule 54(b) is not to be used routinely, or as a courtesy or accommodation to counsel." *Id.* (internal quotations omitted). Instead, it is only to be used when there is "no just reason for delay." *Id.*

Two independent requirements must be met before a district court may certify an order for immediate appeal. First, the district court must "expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002) (quoting *Gen. Acquisition,*

6

*Inc. v. GenCorp., Inc.,* 23 F.3d 1022, 1026 (6th Cir. 1994)). Second, the district court must expressly determine that there is no just reason to delay appellate review. *Id.* With this general framework in mind, the Court turns to the merits of Plaintiff's motion.

### A. Final judgment as to one or more but fewer than all the claims or parties

Under the first requirement, the Court must determine whether the case includes either multiple claims or parties. 10 Wright & Miller, *Federal Practice and Procedure* § 2656, 2655. It must then consider whether one or more but fewer than all the claims have been decided or whether all the rights and liabilities of at least one party have been adjudicated. *Id.* Here, the Court's May 9, 2012 Memorandum Opinion and Order dismissed with prejudice all claims against Stephen and Robert Addington[1] in their individual capacities.[2] (Doc. # 41). All claims against the remaining Defendants remain pending, and are currently stayed pending the resolution of Larry Addington's bankruptcy proceeding. Thus, the Court finds that the first requirement for Rule 54(b) certification is satisfied.

### B. Reason for Delay

Next, the Court must consider whether there is "just reason for delay." Fed. R. Civ. P. 54(b). In making this determination, the Court must weigh the needs of the parties in seeking an immediate appeal against the efficiency of having one appeal at the conclusion of the case in its entirety. *GenCorp, Inc. v. Olin Corp*, 390 F.3d 433, 442 (6th Cir. 2004).

---

[1] From here forward, the Court will refer to Stephen and Robert in their individual capacities as "the Addington brothers" and will refer to Stephen and Robert in their capacity as Co-Trustees as "the Co-Trustees."

[2] The Order also denied Plaintiff's Motion for Leave to Amend its Complaint to add additional claims against the Addington Brothers.

The Sixth Circuit has provided a nonexhaustive list of five factors that a court should consider when making this determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneerring*, 807 F.2d at 1283.

GATX and the Addington brothers offer drastically different analyses of each factor. Their disagreement apparently stems from their divergent opinions regarding the present and future impact of Larry's bankruptcy proceeding on this case. GATX argues that it no longer has standing to pursue the unadjudicated claims against Larry and the Co-Trustees because they are now property of the bankruptcy estate, and that any adjudication on those claims in the bankruptcy proceeding will have no impact on its derivative fraudulent conveyance claims against the Addington brothers. The brothers, on the other hand, argue that the fraudulent conveyance claims against Larry and the Co-Trustees are legally and factually similar, if not identical, to the direct and derivative fraudulent conveyance claims that have been adjudicated in this matter. According to the Addington brothers, an adjudication of the underlying fraudulent conveyance claims in the bankruptcy proceeding could potentially "moot" the need for an appeal in this case. With these underlying arguments in mind, the Court must now consider the *Corrosioneerring* factors to determine whether there is just reason for delay in certifying the Court's May 9th Order as a final judgment.

### 1. The adjudicated and unadjudicated claims share a strong factual and legal relationship

On May 9, 2012, the Court dismissed all claims against Stephen and Robert Addington in their individual capacities, finding that non-transferees could not be directly or derivatively liable under KRS §§ 378.010 and 378.020 for their alleged participation in fraudulent transfers. The fraudulent transfer claims against Larry and the Co-Trustees that have to yet to be adjudicated are premised on the same factual allegations as the adjudicated claims. In fact, those claims have been stayed pending Larry's bankruptcy proceeding, and are currently "property" of Larry's bankruptcy estate.

In *Lowery v. Federal Express Corp.*, 426 F.3d 817 (6th Cir. 2005), the Sixth Circuit offered guidance on how this first factor should be considered. In that case, the district court granted summary judgment in favor of the defendant on the plaintiff's Title VII adverse employment action, but denied summary judgment as to a breach of contract claim. *Id.* at 820. The plaintiff then moved the court to certify its judgment on the Title VII claim under Rule 54(b), which the court granted, finding no just reason for delay because the Title VII and breach of contract claims possessed separate and distinct elements. *Id.* at 822. On appeal, however, the Sixth Circuit dismissed the appeal, finding that the district court should have focused on the similarity of the factual basis between the adjudicated and unadjudicated claims under the first factor. *Id.* at 823. The appellate court stated, "the greater the overlap in the factual basis between the adjudicated and unadjudicated claims, the greater the possibility that this court will have to revisit the same facts under a different theory in a second appeal." *Id.*

9

*Lowery* lends considerable support to the conclusion that the adjudicated and unadjudicated claims in this case share a strong relationship.  Much like *Lowery*, the adjudicated and unadjudicated claims in this matter share an identical factual basis.  In fact, as the Court suggested during the March 12, 2012 oral argument on Stephen and Robert's motion to dismiss, GATX has had difficulty separating the factual allegations against Stephen and Robert as Co-Trustees from the allegations against Stephen and Robert in their individual capacities.  More importantly, both claims center on Larry's actions in conveying property to the irrevocable trust.  As such, the factual basis for the adjudicated and unadjudicated claims is quite similar.

Similarly, in *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279 (6th Cir. 1986), the Sixth Circuit also suggests that the district court should consider whether the adjudicated claim is dependent on the unadjudicated claims.  In that case, Corrosioneerring sued Thyssen Environmental Systems for breach of contract.  *Id.*  In turn, Thyssen filed a counterclaim against Corrosioneering for installing a defective product.  *Id.* at 1281.  Corrosioneering then filed a third-party complaint against distributors Ashland and Berton, arguing that they breached express and implied warranties on the quality of products they sold to Corrosioneering that were later used during the installation process. *Id.*  Based on those warranties, Corrosioneering argued that Ashland and Berton must indemnify it for any liability it may have on the counterclaim.  *Id.*

The district court held a bench trial on the counterclaim and third-party complaint. *Id.*  The court found that Corrosioneering was liable on the counterclaim, but determined that Ashland and Berton made no express or implied warranties to Corrosioneering and, thus, did not have to indemnify Corrosioneering.  *Id.*  The court subsequently entered a final

judgment in favor of Ashland and Berton, dismissing the third-party complaint and certifying the indemnity issue for appeal under rule 54(b). *Id.*

The Sixth Circuit held that certification under Rule 54(b) was improper for a number of reasons. *Id.* at 1281. Notably, it concluded that "although indemnity and liability issues are in some sense 'separate and distinct,' they are nevertheless 'related.' Indeed, by its very nature indemnity is collateral to and dependent upon a finding of liability." *Id.* at 1282. Similar to the *Lowery* Court's analysis, the *Corrosioneering* Court considered whether the issue on appeal was at all related to, or dependent on, an issue not presently before the appellate court.

Like *Corrosioneering*, the adjudicated claims in this case are dependent on the unadjudicated fraudulent conveyance claims. In the May 9th Order, this Court held that, as matter of Kentucky law, a non-transferee cannot be directly or derivatively liable for participating in a fraudulent transfer. Therefore, the Court dismissed all direct and derivative claims against the Addington brothers in their individual capacity. The derivative claims by their very nature are dependent on the underlying, unadjudicated fraudulent conveyance claims.[3] Thus, for the foregoing reasons, the Court concludes that there is a close relationship between the adjudicated and unadjudicated claims, which weighs against certifying the May 9th Order for immediate appeal.

---

[3] GATX argues that the derivative nature of the adjudicated claims is irrelevant to the Court's consideration of this factor. GATX asserts that if the Bankruptcy Trustee pursued the underlying fraudulent conveyance actions and lost, it would not be bound by that judgment. However, as explained in Section III(B)(2), that unfavorable judgment could potentially have preclusive effect on GATX's ability to pursue the derivative fraudulent conveyance claims against Stephen and Robert in their individual capacities. Moreover, as explained in the following paragraph, GATX could potentially pursue the fraudulent conveyance claims in Larry's bankruptcy case through derivative standing, and would certainly be bound by any adverse outcome if that were to occur.

Despite the clear factual and legal relationship between the underlying fraudulent transfer claims and the derivative claims against Stephen and Robert, GATX argues the claims have no relationship. Specifically, GATX notes that it does not *presently* have standing to pursue the unadjudicated claims because they have been stayed pending the dismissal of Larry's bankruptcy case. GATX then states in conclusory fashion that its lack of standing means there is no clear relationship between the claims. While GATX's standing to pursue the unadjudicated claims is certainly important to the Court's ultimate determination, and will be given proper consideration, GATX's argument fails to focus on the proper issue under this factor – whether the claims are legally and factually related.

Although the Court will consider the impact of Larry's bankruptcy case in more detail below, GATX's argument under this factor merits one additional comment. GATX focuses on its present lack of standing to pursue the unadjudicated fraudulent transfer claims against Larry and the Co-Trustees. This focus fails to recognize the possibility, however slight, that GATX might later regain standing to pursue those claims. For example, if the Bankruptcy Trustee chooses not to pursue the fraudulent transfer claims, GATX might petition the bankruptcy court for derivative standing to pursue those claims on behalf of all creditors.[4]  *See In re Trailer Source, Inc.*, 555 F.3d 231 (6th Cir. 2009) ("Based upon the text and statutory history of § 503(b)(3)(B), we believe that the only explanation for this provision is that it approves the practice of permitting creditors, with court authorization, to

---

[4] Obviously, GATX would have preferred to litigate the fraudulent transfer actions against Larry and the Co-Trustees in this case rather than on behalf of all of creditors in the bankruptcy proceeding. After all, GATX's potential recovery would certainly be higher if it were to litigate the issue only on its own behalf. Nonetheless, GATX's argument is about whether it has standing to pursue the claims. The Court offers this possibility to show that GATX might regain standing in the future, and refute the otherwise abstract argument that its lack of standing to pursue the unadjudicated claims shows there is no relationship between the adjudicated and unadjudicated claims.

12

pursue claims on behalf of bankrupt debtors."). Accordingly, GATX's standing argument does not appear to be entirely accurate, and more importantly, misses the mark on the relevant consideration under this factor. Ultimately, the relationship between the adjudicated and unadjudicated claims weighs against GATX's position that there is no just reason for delay in certifying the May 9th Order for immediate appeal.

### 2. The need for appellate review might be mooted by possible development in this Court or Larry Addington's bankruptcy case[5]

Under the second factor, the Court must determine whether future developments in this Court might moot the issue GATX seeks to appeal. GATX argues that this factor weighs in its favor. Specifically, GATX asserts that it is unlikely to receive full payment from Larry for his debts, and thus "it is extremely unlikely that appellate review of the Dismissal Order will be mooted by future developments in this Court." (Doc. # 42-1, p. 9). However, this argument improperly focuses on GATX's ability to recover Larry's *debt* when it should focus on how developments in this Court or Larry's bankruptcy case might moot the need to appeal the adjudicated *claims*.

The Court is ultimately being asked to forecast various developments in this Court or Larry's bankruptcy case that could moot the need for appellate review on the adjudicated claims. This was a straightforward task for the *Corrosioneering* Court. In that case, the court acknowledged that there had yet to be a determination on whether Corrosioneering

---

[5] The *Corrosioneering* Court did not specifically mention developments in other proceedings as a factor district courts should consider. However, in *Corrosioneering*, the Sixth Circuit specifically stated that it was offering a "*nonexhaustive* list of factors which a district court should consider when making a Rule 54(b) determination." *Corrosioneering*, 807 F.2d at 1283 (emphasis added). By stating that the list is nonexhaustive, the Circuit acknowledged that district courts are permitted to make other relevant inquiries, and are ultimately guided by the "interest of sound judicial administration." *Id.* at 1282. Accordingly, the Court finds it relevant to consider the potential impact of Larry's Chapter 7 proceeding on this case.

was liable on the defendant's counterclaim. *Corrosioneering,* 807 F.2d at 1284. The court concluded that if Corrosioneering were found not to be liable for providing a defective product, there would be no need to consider whether the third-party defendants were obligated to indemnify Corrosioneering on appeal. *Id.* Thus, the court held that future developments regarding the counterclaim could moot the need for appellate review on the adjudicated indemnity issue. *Id.*

Unlike *Corrosioneering*, the posture of this case does not allow for a straightforward application of this factor. The Addington brothers argue that if the conveyances-at-issue are litigated in the bankruptcy proceeding and found to not be fraudulent, that result will moot the need for appellate review on the adjudicated claims at issue herein. GATX responds that the Bankruptcy Trustee is the only party with standing to pursue those claims, and any judgment on those claims achieved by the Trustee will not bind GATX. Accordingly, the Court must consider the various ways that the underlying claims might be pursued, and whether GATX would be bound by an unfavorable judgment in each of those instances.

In light of Larry's bankruptcy case, the underlying fraudulent conveyance claims against Larry and the Co-Trustees might be pursued in at least two ways. First, the bankruptcy trustee might pursue those claims under 11 U.S.C. § 544 in an adversary proceeding before the bankruptcy court. Second, as previously discussed, if the bankruptcy trustee chooses not to pursue the claims, GATX might seek derivative standing from the bankruptcy court to pursue the claims on behalf of all of Larry's creditors. *In re Trailer Source, Inc.*, 555 F.3d 231 (6th Cir. 2009).

In the event that the fraudulent conveyance claims are found to lack merit in either of those proceedings,[6] the question becomes whether that outcome would moot the need for appellate review of the direct and derivative fraudulent conveyance claims against the Addington brothers. In essence, the Court must consider whether GATX would be precluded from otherwise pursuing the claims against the Addington brothers in the event that the conveyances were found not to be fraudulent. This question turns on the Addington's ability to assert defensive collateral estoppel against GATX.

GATX acknowledges that the Court must consider the applicability of collateral estoppel in making this determination, but ultimately contends that collateral estoppel would not preclude it from appealing or re-litigating the claims against the Addington brothers. In support, GATX argues that the Addington brothers would not be able to meet the Sixth Circuit's four-part test for determining whether collateral estoppel bars relitigation of an issue.[7] However, GATX's citation to Sixth Circuit law on this point is misguided. Applying the *Erie* Doctrine,[8] the Sixth Circuit has repeatedly held that a federal district court exercising diversity jurisdiction must apply state-law res judicata and collateral estoppel

---

[6] GATX argues that the underlying fraudulent conveyance claims against Larry and the Co-Trustees are a "slam dunk," implying that there is no possibility that it will lose on those claims and, therefore, no possibility that a future development will moot the need for appellate review. However, it would be inappropriate at this juncture for the Court to assume that GATX or the bankruptcy trustee will prevail on the underlying claims. Instead, the Court must assume that there is also a possibility that GATX will not prevail.

[7] In *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Association*, 821 F.2d 328, 330 (6th Cir. 1987), the Sixth Circuit announced the following four requirements that must be met before collateral estoppel may be applied to bar litigation of an issue: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* at 330.

[8] In *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that a federal court exercising diversity jurisdiction must apply state substantive law and federal procedural law. *Id.* at 79.

principles. *See, e.g., Hackler v. Indianapolis & Se. Trailways, Inc.*, 437 F.2d 360, 362 (6th Cir. 1971) ("Our first inquiry is whether federal or state law determines the applicability of the doctrine of collateral estoppel in a diversity case. That state law must be applied was clearly determined by our decision in *Mackris v. Murray*, 397 F.2d 74 (6th Cir. 1968)."). Thus, Kentucky law governs this Court's determination on whether collateral estoppel might bar GATX from pursuing claims against the Addington brothers.

Collateral estoppel, commonly referred to as issue preclusion, is an affirmative defense "which prohibits issues [that] were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit." *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011). This defense is "properly asserted by a person who was not a party to the former action nor in privity with such a party." *Id.* at 872 (internal quotations omitted). It permits the non-party to a use the prior outcome *against* a party to that prior action, "so as to preclude the relitigation of an issue determined in the prior action." *Id.* (quoting *Moore v. Commonwealth of Kentucky*, 954 S.W.2d 317, 319 (Ky. 1997)).

The Kentucky Supreme Court has identified five elements that must be met before a party may assert defensive collateral estoppel: (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound. *Miller*, 361 S.W.3d at 872.

Assuming that the underlying fraudulent conveyance claims are actually litigated in Larry's bankruptcy case, the second through fifth elements would likely be met. If GATX

16

were successful on appeal of the May 9th Order, on remand it would seek to prove that the Addington brothers are individually liable for participating in fraudulent transactions between Larry and the Co-Trustees. Thus, the underlying issue on remand of whether a fraudulent conveyance occurred would be identical to the issue potentially decided in Larry's bankruptcy case. Moreover, a decision on whether fraudulent conveyances occurred would be central to the judgment rendered in Larry's bankruptcy case. Because the second through fifth elements would likely be met, the potential applicability of collateral estoppel turns on the first element – at least one party to be bound in the second case must have been a party in the first case.

GATX argues that this first element will not be met because it will not be a party to the litigation in Larry's bankruptcy case. However, that argument is not necessarily true. As previously stated, if the bankruptcy trustee decides not to pursue the fraudulent conveyance claims, GATX might seek derivative standing to pursue those claims on behalf of all creditors. If that were to happen, GATX would certainly be a party to the prior case, and the first element would be met.

Even if the bankruptcy trustee pursues the underlying fraudulent conveyance claims in an adversary proceeding, GATX might potentially be bound by an adverse decision in that suit. Although GATX would not be a party to that proceeding, Kentucky law would permit the Addington brothers to assert collateral estoppel against GATX if it were in privity with the bankruptcy trustee. *Harris v. Jackson*, 192 S.W.3d 297, 303 (Ky. 2006). Privity is "founded upon such an identity of interest that the party to the judgment represented the same legal right." *Waddell v. Stevenson*, 683 S.W.2d 955, 959 (Ky. Ct. App 1984) (quoting *State Farm Mut. Auto. Ins. Co. v. Shelton*, 368 S.W2d 734, 737 (Ky. 1963)).

In conclusory fashion, GATX argues it would not be a privy of the trustee. The Court sees reason to doubt the validity of that argument. Pursuant to 11 U.S.C. § 544(b)(1), the bankruptcy trustee is granted the sole authority to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). "Essentially, this provision permits the trustee to *'stand in the shoes'* of an unsecured creditor and assert causes of action under state fraudulent conveyance laws for the benefit of all creditors." *In re Felsner*, 289 F. App'x 879, 882 (6th Cir. 2008) (emphasis added). If the trustee were to stand in GATX's shoes and pursue the claim on behalf of all creditors, the trustee would certainly share GATX's legal right in voiding the allegedly fraudulent conveyances. Thus, GATX might be considered in privity with the trustee, and would potentially be bound by a judgment adverse to the trustee.[9] As a result of each of these potential developments, there is a possibility that the need for appellate review of the adjudicated claims will be mooted by future developments.

### 3. There is no possibility that the Circuit Court would be asked to consider the same issue a second time

In the May 9th Order, the Court held as a matter of Kentucky law that non-transferees cannot be directly or derivatively liable for participating in a fraudulent conveyance. The Court made no determination on whether the transfers were in fact

---

[9] Because the Court is merely speculating on potential developments that might moot the need for appellate review, the Court is not definitively holding that the Addington brothers will be able to successfully assert defensive collateral estoppel against GATX. Collateral estoppel must be plead as an affirmative defense, and until it has been plead, the Court makes no final ruling on its applicability. *See Price v. Yellow Cab Co. of Louisville*, 365 S.W.3d 588, 591 (Ky. Ct. App. 2012).

fraudulent under either of the Kentucky fraudulent conveyance statutes. Thus, on appeal, the Circuit Court would only be asked to determine whether Kentucky law recognizes direct or derivative claims against non-transferees for participating in a fraudulent conveyance. That issue is not pertinent to the unadjudicated fraudulent conveyance claims against Larry and the Co-Trustees and, thus, there is no possibility that the Circuit Court would be asked to consider it a second time.

The Addington brothers argue, however, that this factor weighs in their favor because there is a risk that the Sixth Circuit's decision would be merely advisory. They contend there is a possibility that the underlying fraudulent transfer claims will be found to lack merit, and, thus, any appellate decision on the adjudicated claims will be merely advisory. However, this argument is simply an extension of the argument presented under the second factor, which the Court has considered at great length. While the Court agrees with the Addington brothers, their argument is not appropriate here.

### 4. There is no counterclaim which could result in set-off against the judgment sought to be made final

The Addington brothers do not address this factor and, thus, apparently concede that the factor weighs in favor of GATX. Additionally, the Addington brothers have not asserted a counterclaim against GATX that could result in set-off against the judgment. Thus, the Court finds that this factor weighs in favor of certifying the May 9th Order as a final judgment.

### 5. The delay in awaiting a final adjudication of the underlying fraudulent conveyance claims favors certifying the May 9th Order as a final judgment

All of the unadjudicated claims in this matter have been stayed pending the

19

resolution of Larry's bankruptcy proceeding. GATX argues "there is no reason why [it] should have to wait years before it can exercise appellate rights with respect to the Dismissal Order." (Doc. # 42-1). Although GATX's assertion seems a bit of an exaggeration, the Court recognizes that GATX may have to wait some time before all claims in this case are finally adjudicated. Therefore, this consideration does weigh in GATX's favor.

## IV.  CONCLUSION

Although three factors weigh in favor of certifying the May 9th Order for immediate appeal, on balance, the Court finds that an immediate appeal is unwarranted here. The adjudicated claims share a strong factual and legal relationship with the unadjudicated claims. Moreover, there is a possibility that future developments might moot the need for appellate review of the adjudicated claims. Each of these factors control the Court's conclusion.

Ultimately, because of the posture of this case *vis-à-vis* Larry's bankruptcy proceeding, the Court finds there are just reasons for delaying immediate appeal. This is not the "infrequent harsh case" that the Sixth Circuit instructs is appropriate for certification under Rule 54(b). Instead, in the interest of sound judicial administration, an appeal of this case is more appropriate once all claims have been adjudicated. Accordingly,

**IT IS ORDERED** that GATX Corporation's Motion for Certificate of Appealability (Doc. # 42) is hereby **DENIED.**

This 15th day of October, 2012.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\Ashland\0-11-122 MOO denying mtn for COA.wpd