UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 11-122-DLB**

**GATX CORPORATION**                                                                                      **PLAINTIFF**

vs.                              **MEMORANDUM OPINION AND ORDER**

**LARRY ADDINGTON, et al.**                                                                         **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**I.   INTRODUCTION**

In this state-law fraudulent conveyance action, Plaintiff GATX Corporation has filed a second Rule 54(b) motion for certificate of appealability. (Doc. # 48). GATX seeks to have the Court certify its May 9, 2012 Memorandum Opinion and Order (Doc. # 41) that dismissed all claims against Defendants Robert Addington and Stephen Addington in their individual capacities. The Court denied GATX's initial Rule 54(b) motion. (Doc. # 46). This matter has been fully briefed and is therefore ripe for consideration. (Docs. # 48-1, 49, 52). Notwithstanding the passage of time and subsequent developments in this case, the Court will again deny GATX's Rule 54(b) motion because of the factual similarity and dependency that exists among the adjudicated and unadjudicated claims.

The facts of this case are detailed in the Court's two previous Memorandum Opinion and Orders (Doc. # 41, 46), so a brief summary will suffice here. In January 2011, in a separate action, this Court entered an Agreed Judgment in favor of GATX against Larry Addington for $2,900,000.00. *GATX Corporation v. Appalachian Fuels, LLC, et al.*, No. 09-

1


cv-41-DLB, Doc. # 90. In the present suit, GATX alleges that Larry anticipated he would be held liable for a substantial sum of money, so between late 2008 and early 2009 he fraudulently transfered three tracts of land and $1,000,000 to the "Larry Addington Irrevocable Trust f/b/o Maxwell Addington." (Doc. # 1). Stephen and Robert (Larry, Stephen, Robert and Maxwell are brothers)[1] are co-trustees of that trust. GATX attempts to hold Stephen and Robert individually liable under the following two theories: (1) as co-trustees they are directly liable for the fraudulent transfers, and (2) they aided and abetted, and/or conspired with Larry to effectuate the fraudulent transfers.

In its May 9, 2012 Memorandum Opinion and Order, the Court ruled that Robert and Stephen could not be individually liable because they were non-transferees. Specifically, the Court held the following:

> First, the Court held that non-transferees cannot be directly liable for violating Kentucky's fraudulent conveyance statutes. Similarly, consistent with the majority of states that have decided the issue, the Court held that non-transferees cannot be liable under Kentucky law for aiding and abetting, or conspiring to effect, a fraudulent conveyance. As the final matter of first impression, the Court concluded that a violation of Kentucky's fraudulent conveyance statutes cannot give rise to a negligence per se claim under KRS § 446.070. Finally, applying well-settled Kentucky law, the Court held that GATX failed to allege sufficient facts to support a claim of fraud against Stephen and Robert in their individual capacities.

(Doc. # 46 at 4 citing Doc. # 41).[2] GATX responded by filing its initial Rule 54(b) motion to

---

1) For clarity and brevity, hereinafter the Court will refer to the Addington brothers by their first names only.

2) The Court also denied GATX's Motion for Leave to Amend its Complaint (Doc. # 17). GATX's Proposed Amended Complaint asserted three additional claims against Robert and Stephen in their individual capacities: (1) fraud by misrepresentation and omission; (2) conspiracy to effect a fraudulent conveyance; and (3) negligence per se. The Court held that these three proposed amendments would be futile and therefore denied GATX leave. (Doc. # 41 at 18). GATX has not specified whether it wishes to appeal this ruling, but whether it does or not has no impact on the Court's analysis, as all three proposed amendments assert different theories of recovery for the same allegedly fraudulent transfers.

certify. (Doc. # 41). Unchanged since the Court denied GATX's first Rule 54(b) motion is the stay of all claims against Larry, as well as Robert and Stephen in their capacities as co-trustees, due to Larry's January 2012 bankruptcy filing. (Docs. # 20, 38).

There have been two relevant developments since GATX first moved for Rule 54(b) certification. On January 23, 2015, the trustee of Larry's bankruptcy estate filed with the Bankruptcy Court the Trustee's Complaint to Recover Fraudulent Transfers and Collect Amounts Owed (the "Adversary Complaint"). (Doc. # 48-2). The claims in the Advisory Complaint are substantially identical to the claims GATX asserts here, with the Addington brothers, the trust, and Maxwell Addington the named defendants. (*Id.*; Doc. # 48-1 at 5-6). Additionally, because Robert filed for Chapter 7 bankruptcy in February 2015 (Doc. # 47), GATX's present motion seeks review of the Court's May 2012 Order only as it pertains to Stephen.

## II. ANALYSIS

Federal Rule of Civil Procedure 54(b) permits courts dealing with multiple claims or multiple parties to direct the entry of a final judgment as to fewer than all of the claims or parties. The rule states in pertinent part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

This Rule was adopted in "response to the need created by the liberal joinder provisions for the Federal Rules of Civil Procedure to revise 'what should be treated as a judicial unit for purposes of appellate jurisdiction.'" *Corrosioneering, Inc. v. Thyssen Envtl.*

*Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 432 (1956)). "It attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.* (internal quotations omitted). Ultimately, the rule allows the district court to act as a "dispatcher," and exercise its discretion in the interest of sound judicial administration in "releas[ing] for appeal final decisions . . . for fewer than all the parties." *Id.* (internal quotations omitted).

The Sixth Circuit instructs district courts to exercise the power conferred by Rule 54(b) only "in the infrequent harsh case as an instrument for the improved administration of justice." *Id.* (internal quotations omitted). Accordingly, "Rule 54(b) is not to be used routinely, or as a courtesy or accommodation to counsel." *Id.* (internal quotations omitted). Instead, it is only to be used when there is "no just reason for delay." *Id.*

Two independent requirements must be met before a district court may certify an order for immediate appeal. First, the district court must "expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002) (quoting *Gen. Acquisition, Inc. v. GenCorp., Inc.,* 23 F.3d 1022, 1026 (6th Cir. 1994)). Second, the district court must expressly determine that there is no just reason to delay appellate review. *Id.*

In making the second determination, the Court must weigh the needs of the parties in seeking an immediate appeal against the efficiency of having one appeal at the conclusion of the case in its entirety. *GenCorp, Inc. v. Olin Corp*, 390 F.3d 433, 442 (6th Cir. 2004). The Sixth Circuit has provided the following nonexhaustive list of five factors that a court should consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneerring*, 807 F.2d at 1283. Although these factors are a useful guide, "no precise test exists for determining whether there is a just reason for delay." *Gen. Acquisition*, 23 F.3d at 1030 (citation omitted).

### A. Final judgment as to one or more but fewer than all the claims or parties

Under the first requirement, the Court must determine whether the case includes either multiple claims or parties. 10 Wright & Miller, *Federal Practice and Procedure* § 2656, 2655. It must then consider whether one or more but fewer than all the claims have been decided or whether all the rights and liabilities of at least one party have been adjudicated. *Id.*

The Court's May 9, 2012 Memorandum Opinion and Order dismissed with prejudice all claims against Robert and Stephen in their individual capacities. (Doc. # 41). Meanwhile, the remaining claims are currently stayed pending the resolution of Larry's bankruptcy proceeding. For good reason, Stephen does not dispute that the first requirement for Rule 54(b) certification is satisfied.

### B. Just Reason for Delay

The Court will address the last three factors first as they are largely undisputed and weigh in favor of certification. It will then turn to the first two factors, which case law suggests, and this Court finds, are the most significant. As it did the first time, the Court

5

relies on the later in denying GATX's motion.

### 1. There is no possibility that the Circuit Court would be asked to consider the same issue a second time

In its previous Order, the Court held that this factor weighed in favor of granting a certificate of appealability. (Doc. # 46 at 18-19). The Court noted that if it were to grant GATX's Motion, the Circuit Court would be asked to determine whether Kentucky law recognizes direct or derivative claims against non-transferees for participating in a fraudulent conveyance. (*Id.*). Since that issue is not pertinent to the unadjudicated fraudulent conveyance claims against Larry and the co-trustees, the Court found there was no possibility that the Circuit Court would be asked to consider it a second time. (*Id.*).

Stephen argues that this analysis has changed because of Robert's bankruptcy filing. (Doc. # 49 at 7-8). He predicts that if Robert's bankruptcy case is dismissed and the automatic stay lifted, the Circuit Court may have to revisit whether a non-transferee can be held liable for a fraudulent conveyance. (*Id.*). Not true. If the Court were to grant Stephen's Rule 54(b) motion, the Sixth Circuit Court of Appeals would have the opportunity to address whether, as a general matter, a non-transferee can be held liable for a fraudulent conveyance under Kentucky law. Irrespective of whether Robert's bankruptcy case is resolved, the Sixth Circuit Court of Appeals would not need to answer that question again. This factor weighs in favor of granting GATX's motion.

### 2. There is no counterclaim which could result in a set-off against the judgment sought to be made final

As Stephen concedes, he has not asserted a counterclaim against GATX that could result in set-off against him. (Doc. # 49). This factor therefore weighs in favor of certification.

6

### 3. Larry's bankruptcy filing has resulted in significant delay

The Court previously noted that "GATX may have to wait some time before all claims in this case are finally adjudicated," and that "this consideration does weigh in GATX's favor." (Doc. # 46 at 20). Three years have now passed since the Court made that statement. Stephen suggests that GATX "should not be heard to complain" about the delay because it has not objected to the trustee's motions for an extension of time to assert claims on behalf of Larry's estate. (Doc. # 49 at 7). This waiver argument misses the mark. GATX has little to no control over the progress of Larry's bankruptcy proceeding. And even if it did, the Court will not require or encourage GATX to engage in scorched-earth litigation tactics in order to preserve this factor weighing in its favor–objections to motions for an extension of time often waste judicial resources and prevent the parties and courts from getting to a case's merits. Of all the factors, this one weighs most heavily in GATX's favor.

### 4. The adjudicated and unadjudicated claims share a strong factual and legal relationship

GATX's claims against Stephen and Robert in their individual capacities have been adjudicated as a result of the Court's holding that a non-transferee cannot be directly or derivatively liable for his participation in a fraudulent transfer. This is the ruling that GATX seeks to appeal. GATX's fraudulent transfer claims against Larry and his brothers as co-trustees remain unadjudicated because of the bankruptcy stay. The Court previously found that these adjudicated and unadjudicated claims share a "strong factual and legal relationship." That has not changed.

7

As another district court has noted, "the Sixth Circuit seems to place the greatest weight on . . . the relationship between adjudicated and unadjudicated claims." *Bell v. Hall*, No. CIV.A. 1:06-CV-00085, 2007 WL 2827670, at *2 (W.D. Ky. Sept. 28, 2007) (citing *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 820 (6th Cir. 2005)). For example, in *Lowery* the Sixth Circuit Court of Appeals stated that the "interrelationship of the claims themselves weighs heavily against certification under Rule 54(b)." 426 F.3d at 822. Indeed, the *Lowery* court determined that there was no "just reason for delay" after analyzing the relationship factor only. *See id.* at 822-23.

What type of relationship between the adjudicated and unadjudicated claims cautions against granting Rule 54(b) certification? "[T]he greater the overlap in the factual basis between the adjudicated and unadjudicated claims, the greater the possibility that th[e] [appellate] court will have to revisit the same facts under a different theory in a second appeal." *Id.* at 823 (emphasis added). Therefore, when the adjudicated and unadjudicated claims share a "commonality in operative facts" it "militates against immediate review." *Id.* A court should also consider whether the adjudicated claims are legally dependent on the unadjudicated claims. *See Corrosioneering*, 807 F.2d at 1284 (holding that a district court erred by certifying a ruling on indemnity before there was a determination of liability because the issues were related, collateral and dependent upon each other).

The adjudicated and unadjudicated claims here share common operative facts. As the Court noted in its first Order denying a certificate of appealability, from the outset of this litigation "GATX has had difficulty separating the factual allegations against Stephen and Robert as Co-Trustees from the allegations against Stephen and Robert in their individual capacities. More importantly, both claims center on Larry's actions in conveying property

to the irrevocable trust. As such, the factual basis for the adjudicated and unadjudciated claims is quite similar." (Doc. 46 at 10). In *Lowery*, the court stated that the action before it arose "out of a discrete and straightforward employment dispute that should be reviewed as a single unit." 426 F.3d at 823. Here, we have a dispute over the propriety of Larry's decision to transfer assets to a trust that, like *Lowery,* is best tried as single unit, not in piecemeal fashion.

The adjudicated claims are also dependent on the unadjudicated claims. In *Corrosioneering*, the court held that "juridical concerns counsel against the immediate appeal of a question of indemnity apart from or, at least, prior to the consideration on appeal of the question of whether any liability exists." 807 F.2d at 1284. Similar to indemnity and liability, GATX's individual claims against Stephen are "collateral to and dependent upon a finding" that Larry fraudulently transferred assets. *Id.* Indeed, with the fraudulent transfer issue still unresolved, the Court's dismissal of Stephen and Robert in their individual capacities has "no immediate financial impact" on GATX. *See id.* Like an appeal on the issue of indemnity prior to a finding of liability, having an appellate court decide whether a non-transferee can be liable for a fraudulent transfer before there has been a determination whether there even was a fraudulent transfer "puts the proverbial cart before the horse." *See Gen. Acquisition*, 23 F.3d at 1031.

GATX submits that the adjudicated and unadjudicated claims are not dependent upon each other. It points to two facts in support: (1) the unadjudicated claims are part of Larry's bankruptcy estate under 11 U.S.C. § 541(a)(1), and (2) the trustee has filed an Adversary Complaint. These two facts do lend significant support to GATX's argument that it is not likely to regain standing to pursue the unadjudicated claims in this action. GATX,

9

however, fails to persuasively argue how this leads to the conclusion that the claims are unrelated. As discussed above, claims are related for Rule 54(b) purposes when they are factually and legally related. Whether the fraudulent transfer issue is tried here or in bankruptcy court, the factual similarities and legal dependency between the adjudicated and unadjudicated claims remains unchanged. Indeed, regardless of where the unadjudicated claims are litigated, denying certification is consistent with the reasons courts consider the relationship factor: to prevent appellate courts from having to review subsequent appeals that deal with the same operative facts and from having to issue opinions that have no immediate impact and may ultimately become unnecessary. The Court finds that this important factor standing on its own weighs against certification. *See Corrosioneering*, 807 F.2d at 1284; *Bell*, 2007 WL 2827670, at *2 (denying Rule 54(b) certification because the adjudicated and unadjudicated claims were closely related "even though some of the other factors weigh in favor of certification, such as the unlikelihood of mootness and the absence of counterclaims which could result in a set-off against the judgment sought to be made final").

> 5. **The need for appellate review might be mooted by possible developments in Larry Addington's bankruptcy case**

As the Court thoroughly discussed in its prior Order, GATX could ultimately be precluded from litigating the fraudulent transfer issue. (Doc. # 41 at 15-18). More specifically, a ruling by the bankruptcy court that the transfers were not fraudulent could result in Stephen asserting a successful collateral estoppel defense. (*Id.*). Were that to occur, the need for appellate review of the non-transferee liability issue may become moot. *Corrosioneering* instructs that it is not just the possibility of future developments *in this*

*Court* that is of concern, but future developments in other courts as well. *See id.* at 1284 ("[T]he same concern which counsels against certifying an issue which may be mooted by future developments in the district court militates against an immediate appeal . . . when there is a possibility that future developments in the appellate court could moot the need for review of that issue."). GATX begrudgingly acknowledges that this factor "conceivably weighs against certification." (Doc. # 48-1 at 13).³

Moreover, "[t]he potential for mootness takes on even greater weight in the 54(b) balance when the question [the appellate court] may never have to address presents sophisticated and unprecedented questions of state law." *Gen. Acquisition*, 23 F.3d at 1031. Such a concern is present here, where the appellate court would be asked to review matters of first impression involving Kentucky fraudulent conveyance law. As discussed *supra*, the appellate court's decision could ultimately become moot if the bankruptcy court, this Court, a jury, or the appellate court later determines that there was no fraudulent transfer. Judicial restraint cautions against taking this potentially unnecessary course.

---

3) In concluding in its prior Order that collateral estoppel could potentially preclude GATX from re-litigating the fraudulent transfer issue, the Court applied Kentucky law. (Doc. # 46 at 16 citing *Hackler v. Indianapolis & Se. Trailways, Inc.*, 437 F.2d 360, 362 (6th Cir. 1971)). Kentucky has identified five elements that must be met before a party may assert collateral estoppel: (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound. *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011).

If the underlying fraudulent conveyance claims are actually litigated in Larry's bankruptcy case, the second through fifth elements would likely be met. (Doc. # 46 at 16-17). The first element could also be satisfied because Kentucky law would permit the Addington brothers to assert collateral estoppel against GATX if it were ultimately found to be in privity with the bankruptcy trustee. (*Id.* at 17); *Miller*, 361 S.W.3d at 872. The Court is not now holding that collateral estoppel will apply, but is simply considering the possibility that it will as is required under the factors enumerated in *Corrosioneering*.

### III. CONCLUSION

The Court is cognizant of the three years GATX has had to wait during the pendency of Larry's bankruptcy proceeding. However, there remains a strong factual and legal relationship among the adjudicated and unadjudicated claims, as well as the potential for an advisory opinion from the Sixth Circuit on an issue of Kentucky state-law were this Court to grant GATX's motion. Accordingly,

**IT IS HEREBY ORDERED** that GATX Corporation's Motion for Certificate of Appealability (Doc. # 48) is **DENIED.**

This 17th day of August, 2015.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\Ashland\0-11-122 MOO denying mtn for COA 2.wpd